**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **WILLIAM BEASLEY,**<br>**Lake Erie Correctional Institution**<br>**501 Thompson**<br>**Conneaut, Ohio**<br><br>**Petitioner,**<br><br><br>**VS.**<br><br>**WARDEN, LAKE ERIE CORRECTIONAL**<br>**Lake Erie Correctional Institution**<br>**501 Thompson**<br>**Conneaut, Ohio**<br><br>**Respondent,** | **Case No.:**<br><br>**District Court Judge**<br><br>**District Court Magistrate**<br><br><u>**EVIDENTIARY HEARING REQUESTED**</u><br><br><u>**DISCOVERY REQUESTED**</u> |

<u>**PETITION UNDER 28 USC § 2254 FOR WRIT OF**</u>
<u>**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**</u>

### *I. Parties*

1. Petitioner, William Beasley, is currently serving a fifteen-year-to-life sentence at the Lake Erie Correctional Institution.  He is due to be interviewed by the parole board in 2037.

2. Respondent is the warden of the Lake Erie Correctional Institution. The warden is represented in these proceedings by the Attorney General, David Yost, 30 E. Broad Street, 17th Floor, Columbus, OH 43215-3428.

### **Custody of Petitioner**

3. Petitioner is being held by the state of Ohio at the Lake Erie Correctional Institution, where the Respondent is the warden. He is being held as the result of an Ohio state court conviction for murder.

### *II. Jurisdiction*

4. The United States District Court has jurisdiction over this petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2254 and 1331. Petitioner is in custody pursuant to judgment of an Ohio state court and seeks relief on the ground that his imprisonment and sentence violate his rights under the United States Constitution.

### **III. Venue**

5. Venue is proper in the United States District Court for the Northern District of Ohio, Eastern  Division because Petitioner's conviction was obtained in the Lake County Common Pleas Court in Painesville, Ohio. *See 28 U.S.C. § 2241(d).*

### *IV. Procedural History of the case:*
*Statement of the Facts*

6. Petitioner was Z.B's natural father, born on April 27, 2020.  The mother was Kaitlyn Henry. He and the mother were first-time parents. Z.B suffered from withdrawal from drugs taken by his mother during the pregnancy.

7. Petitioner did his best to care for his young son. Like many young parents, the couple had to learn to care for Z.B.

8. On May 18, 2020, the mother of the child found blood on Z.B.'s pacifier. She also claimed there was a bruise on the child's finger. She had no explanation for either.

9. On May 21, 2020, Kaitlyn noticed that Z.B. was gasping to breathe, and his color was pale. She also saw her son had baggy eyes.

10. On May 22, 2020, Petitioner called 911, and his saga with the criminal justice system began. He told the dispatcher that his son had choked and stopped breathing during feeding. Z.B. was also having trouble breathing. Kaitlyn woke up the Petitioner, urging Z.B. to breathe.

11. The Willoughby Fire Department transported Z.B. to Hillcrest Hospital. The doctors examined Z.B. Z.B. presented with pale, jerky limbs and was sensitive to stimuli.  The child had a low white cell count and low hemoglobin. A lumbar puncture indicated blood in the spinal fluid as well as a great deal of intracranial pressure. The child was then sent to the Cleveland Clinic.

12. At the Cleveland Clinic, CAT and MRI scans were performed on Z.B. These tests showed brain bleeds that had occurred at different times. Radiology tests showed that Z.B. suffered broken bones in his arms and legs. This testing further revealed that Z.B. sustained near-continuous seizures.

13. The doctor who examined Z.B. claimed that there was no way that these injuries could be non-accidental. Social workers from the hospital were called to investigate the situation. The pediatric radiologist found that the fractures were highly indicative of abuse.

14. On May 25, 2020, the doctors looking after Z.B. determined that his injuries were not survivable. On May 29, 2020, the decision was made to take Z.B. off life support. Z.B. succumbed to his maladies soon after.

15. Willoughby police began their investigation on May 22, 2020. On May 26, 2020, the police interviewed the Petitioner. During this interview, the Petitioner was broken about his slowly dying son. He was trying to remember what could have caused all these injuries. He felt that he must have done it accidentally. He was interviewed again at his home on May 29, 2020.

16. Willoughby police further executed a warrant for the Petitioner's home. They found in his search history a Google search about what to do if you accidentally injure

your child. He pleaded with the police because he felt so awful. The Cuyahoga County Coroner found that Z.B. died from blunt force trauma to the head, body, and extremities. The manner of death was homicide.

*Statement of the Case*

17. On May 11, 2021, a five-count indictment charging the Petitioner with two counts of murder in violation of R.C. 2903.03 (B), an unclassified felony; three counts of involuntary manslaughter in violation of R.C. 2903.04 (A), a felony of the first degree; one count of reckless homicide in violation of R.C. 2903.041, a felony of the third degree; two counts of endangering children in violation of R.C. 2919.22; and a single count of felonious assault in violation of R.C. 2903.11, a felony of the second degree.  The arraignment was May 14, 2021, and the bond was set. The Lake County Public Defender's Office entered its appearance as counsel of record.

18. The defense filed ten motions in limine to limit mostly medical evidence in the months leading up to the trial in this matter. Counsel did not attempt to suppress or restrict the statement made by the Petitioner. Expert assistance was sought regarding the medical issues prevalent in this case, but no expert was sought regarding false confessions.

19. A jury was empaneled and heard evidence over several days. Following a few hours of deliberation, the Petitioner was found guilty of count one; he was found not guilty of count two, guilty of counts three, four, and five, and not guilty of count six.

20. On March 24, 2022, the Petitioner was sentenced to fifteen years to life in prison. This was journalized on March 30, 2022, by this trial court.

21. A notice of appeal and docketing statement was filed with the court on April 28, 2022. The transcript and record were filed on July 8, 2023. On March 6, 2023, the Eleventh District Court of Appeals affirmed the conviction and sentence of the Petitioner. A timely notice of appeal and memorandum in support of jurisdiction were filed with the Ohio Supreme Court on April 24, 2023.

22. The Petitioner filed a timely petition for post-conviction relief with the Lake County Common Pleas Court. The trial court denied this, and a timely appeal followed. The Eleventh District Court of Appeals affirmed the trial court on May 5, 2025. **State v. Beasley, 2025-Ohio-1599, 2025 Ohio App. LEXIS 1595 (May 5, 2025).** The Ohio Supreme Court denied jurisdiction on August 19, 2025. **State v. Beasley, 179 Ohio St. 3d 1448, 2025-Ohio-2888, 2025 Ohio LEXIS 1641 (Aug. 19, 2025).** No review was sought in the Supreme Court of the United States.

**Other Motions:**

23. No other motions have been filed in state or federal court other than the litigation

previously mentioned on behalf of the petitioner. No claims are pending in state or federal court regarding the conviction of the Union County Common Pleas Court. Petitioner does not contemplate filing any petition or motion attacking the conviction in the future. Petitioner, of course, reserves the right to do so in either state court or federal court.

### *V. Grounds for Relief*

### *Ground Number One*
**THE TRIAL COURT  DENIED THE PETITIONER'S RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT INTRODUCED AN INVOLUNTARY CONFESSION TAKEN BY THE POLICE IN VIOLATION OF THE FIFTH AMENDMENT AND SIXTH AMENDMENT AND MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION**

### CONSTITUTIONAL LEGAL STANDARD

24.  The United States Supreme Court has found that "the law cannot measure the force of the influence used or decide upon its effect upon the mind of the prisoner, and, therefore, excludes the declaration if any degree of influence has been exerted." **Bram v. United States, 168 U.S. 532, 565.** Relevant factors to consider in determining whether a confession was voluntary include the suspect's age, intelligence, education, and familiarity with the criminal justice system. **Withrow v Williams, 507 U.S. at 680 (collecting factors); Michael C., 442 U.S. at 725-26 (significant criminal justice experience); Clewis v. Texas, 386 U.S. 707, 712, 87 S. Ct. 1338, 18 L. Ed. 2d 423 (1967) (limited educational attainment); Culombe v. Connecticut, 367 U.S. 568, 620, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961) (intellectual disability); Gallegos v. Colorado, 370 U.S. 49, 53, 82 S. Ct. 1209, 8 L. Ed. 2d 325 (1962) (age)**.

### PETITIONER RAISED THIS CONFRONTATION CLAIM

25. Petitioner raised these claims:

    *a.*    <u>Trial Court:</u> This was raised in the Post-Conviction Petition filed timely in the Lake County Clerk of Courts on July 6, 2023.

    *b/*    <u>Appellate Court:</u> This claim was raised in the Merit Brief, as assignment of error two, on February 5, 2025.

    *c.*     <u>Ohio Supreme Court:</u> This claim was raised in the Memorandum in Support of Jurisdiction filed with the Ohio Supreme Court

**ELEVENTH DISTRICT COURT OF APPEAL STANDARD**.

26.   The state court determined this claim was denied by res judicata.

**OHIO'S ELEVENTH DISTRICT'S ANALYSIS**

27.   The following is the Eleventh District's factual analysis of the claim:

In his second assignment of error, Petitioner contends that his interrogations at the Willoughby Police Department and at his home resulted in an involuntary confession. He cites several factors that lead him to this conclusion, including that he appeared for the interrogation without legal counsel, that he was young and had little experience with the criminal justice system, and that his child was dying, making him more susceptible or compliant to confess falsely.

**State v. Beasley, 2025-Ohio-1599 (2025)**

**ELEVENTH DISTRICT COURT'S ANALYSIS IS UNREASONABLE**

28.   Habeas relief under 28 U.S.C.S. § 2254(d)(1) is limited to cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with the U.S. Supreme Court's precedents. In determining this, a habeas court must determine what arguments or theories supported or could have supported the state court's decision. Then it must ask whether fair-minded jurists could reasonably disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. **Triplett v. Hudson, 2011 U.S. Dist. LEXIS 2760**, in the headnotes. Habeas relief is available only "where there is no possibility fair-minded jurists could disagree that the state court's

decision conflicts with [the Supreme] Court's precedents." **Harrington, 131 S. Ct. at 786**. A federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." **Williams, 529 U.S. at 411**. Rather, to justify issuance of a writ, the state court's application of "clearly established" Supreme Court authority must be "objectively unreasonable." **Id. at 409.**

29. Here, the state court of appeals found that the rest of the judicial state barred the claim. Although the application of Ohio's res judicata rule is a matter of state law, "an incorrect application of a state res judicata rule does not constitute reliance on an adequate and independent state ground." **Jones v. Bradshaw, 46 F.4th 459, 485 (6th Cir. 2022) (quoting Wogenstahl v. Mitchell, 668 F.3d 307, 341 (6th Cir. 2012)); see also Greer, 264 F.3d at 675 ("[W]hen the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded."); White v. Mitchell, 431 F.3d 517, 527 (6th Cir. 2005). So, if a habeas court concludes that "the Ohio Court of Appeals erroneously determine[d] that [a] claim is barred by res judicata," it "may consider the merits of that claim de novo." Jones, 46 F.4th at 486.** The finding here that res judicata applies is incorrect, as the claim here relies upon evidence outside of the record.

30. Reviewing this claim de novo, this court should find that the statement made by the Petitioner was involuntary. The expert hired by post-conviction counsel state

that these statements were or could be the result of panic or anxiety about being in the situation, not that he was guilty or that a crime occurred.

### Ground Number Two

**THE TRIAL COURT ERRED WHEN IT FAILED TO FIND INEFFECTIVE ASSISTANCE FOR FAILING TO FILE A MOTION TO SUPPRESS THE STATEMENT WAS INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENTS MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT**

### <u>CONSTITUTIONAL LEGAL STANDARD</u>

31. The two-prong test set out in **Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)** governs claims of ineffective assistance of counsel, including claims of ineffective assistance of appellate counsel. **Mahdi v. Bagley, 522 F.3d 631, 636 (6th Cir. 2008).** Strickland's first prong requires Ceasor to demonstrate that "counsel's representation was deficient in that it 'fell below an objective standard of reasonableness.'" **Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005) (quoting Strickland, 466 U.S. at 688)**. In assessing whether counsel's performance was deficient, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and Ceasor "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." **Strickland, 466 U.S. at 689 (citation and quotation marks omitted).** The second prong requires Ceasor to show "prejudice," i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id.**

**at 694.** "A reasonable probability is sufficient to undermine confidence in the outcome." **Id.**

### PETITIONER HAS RAISED THIS CLAIM IN STATE COURT

32. Petitioner raised this claim in the state court:

      a. <u>Trial Court:</u>  this was raised in the Post-Conviction Petition filed July 6, 2023.

      b. <u>Appellate Court:</u>  this was raised as assignment of Error Number three on the Merit Brief filed on February 3, 2025.

      c. <u>Ohio Supreme Court:</u>  This claim was raised in the Memorandum in support of Jurisdiction timely filed.

### ELEVENTH DISTRICT COURT OF APPEALS STANDARD

33. The court of appeals found that this was barred by res judicata. **State v Beasley, 2025 Ohio 1599, at ¶ 46.**

### ELEVENTH DISTRICT COURT OF APPEALS ANALYSIS WAS UNREASONABLE

34. The finding of res judicata is an incorrect one not supported by the state court record. Only claims involving evidence outside the trial record may first be raised in a petition for state post-conviction relief. **See McGuire v. Warden, Chillicothe Corr. Inst., 738 F.3d 741, 751-752 (6th Cir. 2013); State v Cole, 443 N.E. 2d at 171) "Generally, the introduction in [a state post-conviction] petition of evidence dehors the record . . . is sufficient, if not to mandate a hearing, at least to avoid dismissal based on res judicata.").**

35. In reviewing this matter de novo, this court should find that a motion to suppress should have been filed.  This constitutes ineffective assistance and violates the

federal constitution. There was some question whether or not the Petitioner had given this statement voluntarily.

### Claims Number Three

**THE TRIAL COURT ERRED WHEN IT FAILED TO FIND INEFFECTIVE ASSISTANCE FOR FAILING TO CALL AN EXPERT ON FALSE CONFESSIONS AND VIOLATED THE PETITIONER'S RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENTS MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT**

### CONSTITUTIONAL LAW STANDARD

36. It is recognized that "[t] he selection of an expert witness is a paradigmatic example of the type of 'strategic choice[e]' that, when made 'after a thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" **Hinton v. Alabama, 571 U.S. 263, 275, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014) (quoting Strickland, 466 U.S. at 690.).**

### PETITIONER RAISED THIS CLAIM IN STATE COURT

37. Petitioner raised the claim in state court :

   a. <u>Trial Court</u>:  Petitioner raised this claim in a timely filed post-conviction petition on July 6, 2023.

   n. <u>Appellate Court</u>:  Petitioner raised this claim in a timely filed appeal of the trial court's decision on February 5, 2025.

   c. <u>Ohio Supreme Court</u>:  Petitioner raised this claim in his memorandum in Support of Jurisdiction.

### ELEVENTH DISTRICT COURT OF APPEALS STANDARD

38. The Eleventh District found that where a petitioner raises the issue of ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary

documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." State v. Miller, 2020-Ohio-871, ¶ 9 (11th Dist.), quoting State v. Jackson, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus." **State v Beasley, 2025 Ohio 1599 at ¶ 39.**

### <u>ELEVENTH DISTRICT COURT OF APPEALS ANALYSIS</u>

39. The court found:

The State's response to Appellant's petition for postconviction relief contained documentation that detailed how Appellant's trial counsel did in fact take steps to obtain an expert opinion on confessions from the same Dr. Bresler that he ultimately hired to provide the forensic psychological evaluation used for his postconviction petition. On August 8, 2021, Appellant's trial counsel filed, under seal, a motion for payment of expert fees for Dr. Scott Bresler's work on his case. The invoice indicated that Dr. Bresler spent six hours reviewing the case materials, including the State's interrogations of Appellant, and then conducted a telephone consultation with Appellant's trial counsel. Subsequent documentation indicates that Dr. Bresler was paid for this work. While the exact nature of the discussion between trial counsel and Dr. Bresler is not known, it appears that trial counsel at least sought an expert opinion on confessions but ultimately declined to pursue this strategy at trial. Given the evidence in the postconviction petition record, we will not second-guess trial counsel's trial strategy.

**State v Beasley, 2025 Ohio 1599 at ¶ 55-56**

### <u>STATE COURT'S ANALYSIS IS UNREASONABLE</u>

40. Scholarships on false confessions identify three categories of false confessions. **See Richard A. Leo & Richard J. Ofshe, The Decision to Confess Falsely: Rational Choice and Irrational Action, 74 Denv. U. L. Rev. 979, 997 (1997) ("Leo & Ofshe").** First, "stress-compliant" false confessions result from interrogation's "inherent stressors," such as being placed in an unfamiliar, accusatory situation in which the defendant loses control and undergoes emotional distress. **Leo & Ofshe, 74 Denv. U. L. Rev. at 997.** In such a situation,

confessing falsely becomes a short-term strategy to avoid the stress of an interrogation—U. **L. Rev. at 997.** Here, the Petitioner had never been interviewed by the police before, did not believe he could leave, and was suffering from stress and grief. Second, "coercive compliant" false confessions result from law enforcement's more overt coercion, using threats, promises of leniency, and psychological manipulation. See Leo & Ofshe, 74 Denv—U. L. Rev. at 998. Third, "coerced-persuaded" false confessions result when the tactics that produce coercive compliant false confessions cause the defendant to believe that he or she committed the crime. Leo & Ofshe, 74 Denv. U. L. Rev. at 999. The police, in this case, repeatedly asked the Petitioner who they thought injured the child. The Petitioner did not believe there was any other reason the child would be hurt. This was inaccurate.

### VI. Exhaustion

41.    As a rule, state prisoners must first exhaust their available state court remedies before seeking federal habeas corpus relief by fairly presenting all their grounds for relief to the state courts. **28 U.S.C. § 2254(b)-(c); Clemmons v. Sowders, 34 F.3d 352, 354 (6th Cir.1994).** Normally, the exhaustion requirement is satisfied after the petitioner fairly presents all his issues to the highest court in the state in which the petitioner was convicted, thus giving the state a full and fair opportunity to rule on them before seeking relief in federal court. **Rust v. Zent, 17 F.3d 155, 160 (6th Cir.1994).** All grounds for relief raised in this petition for a writ of habeas corpus have previously been presented to the Ohio State Courts.

**VII. ADEPA One Year Statute of Limitations**

42.     Pursuant to ADEPA, a state prisoner claiming imprisonment in violation of the laws or Constitution of the United States has one year from the completion of direct review of his case to file for federal habeas relief. **See 28 U.S.C. § 2244(d)(1).** The time period in which the defendant seeks state post-conviction review of his conviction tolls the statute of limitations for purposes of AEDPA.  **28 U.S.C. § 2244(d)(2).** This petition has been brought within the one-year statute of limitations as required by AEDPA.

### *VIII.   PRAYER FOR RELIEF*

WHEREFORE, the petitioner prays for:

1.  Issue a writ of habeas corpus to have Petitioner brought before the court to the end that he may be discharged from his unconstitutional conviction.

2.  Require Respondent to bring forward the entire record of the state court proceedings, and to specify any proceeding in the case that has been reported but not transcribed.

3.  Require Respondent to file an answer admitting or denying each factual allegation herein.

4.  Allow Petitioner to conduct discovery and to expand the record relating to the issues raised by this Petition.

5.  Conduct a hearing at which proof may be offered concerning the allegations in this petition that Respondent does not admit.

6.   Allow Petitioner sufficient time to brief the issues of law raised by this petition; and

7.   Grant such other and further relief as may be appropriate.

Respectfully submitted,

**/s/ Eric Allen**

_____

ERIC J ALLEN          (0073384)
4200 Regent, Suite 200
Columbus, OH 43219
Tele No. 614.443.4840
Fax No. 614.445.7873
Email:eric@eallenlaw.com